### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 08-042** |
| **CLARENCE PAUL DOROSAN** | **DIVISION "B"** (3) |

### MEMORANDUM OPINION
### REJECTING DEFENDANT's SECOND AMENDMENT CHALLENGE
### WITH RESPECT TO POSTAL REGULATION 39 C.F.R. § 232.1(1)
### BANNING WEAPONS ON POSTAL PROPERTY

On June 25, 2008, the undersigned Magistrate Judge conducted an oral hearing regarding the Defendant's Motion to Dismiss Superseding Bill of Information #25 with counsel for both parties and the defendant present.  For the following reasons, the defendant's motion is DENIED.

### SUPERSEDING BILL OF INFORMATION

Defendant postal employee, Clarence Paul Dorosan, was charged via superseding Bill of Information (Doc. #16) with a violation of Title 39, United States Code of Federal Regulations, Section 232.1(1) – *i.e*., knowingly storing a weapon on postal property without official purpose.

### FACTUAL BASIS

The Government has submitted the following factual basis for the charged offense, to wit:

> On or about October 20, 2007, Norbert Lewis, a postal inspector at the Gretna Post Office in [] Louisiana, discovered a black canvas bag on the workroom floor next to a letter case for Route 5301.  Said route was worked by the defendant, Clarence Dorosan ("Dorosan"), a letter carrier on the previous day.  Lewis did not know to whom the bag belonged so he opened the bag and found a magazine with twelve (12) rounds or .40 caliber hand gun ammunition and three (3) empty shell casings in the bag.  Lewis called another supervisor, Elemuel Coleman, who watched Lewis secure the bag and lock it in a file cabinet until the

Postal Inspectors arrived.  Dorosan was supposed to work that morning but called in sick.

On Monday, October 22, 2007, Postal Inspectors returned to the Post Office to conduct a follow up investigation regarding the recovery of the loaded magazine.  At approximately 10:00 a.m., Dorosan arrived at the Post Office. Postal Inspectors identified themselves to Dorosan and requested to speak with him.  Dorosan said he knew why they were there and stated, "Yes, I know about you finding the magazine in my bag but I can explain everything."

Postal Inspectors escorted Dorosan to his locker and searched it along with a bag he was carrying.  No weapons were found in the locker or the bag. Dorosan voluntarily surrendered a red pocket knife he was carrying on his person. Postal Inspectors asked Dorosan if he was otherwise armed.  Dorosan admitted having a gun in the glove compartment of his personal vehicle which was parked in the Post Office parking lot.  The employee parking lot is adjacent to the post office building and is enclosed by a gate.  The gate has a sign on both of its entrances which warns all parties entering that their vehicles are subject to search and cites Title 39 C.F.R. 232.1(b)(2).  Postal Inspectors escorted Dorosan to his vehicle.  Dorosan unlocked the vehicle, handed the keys to Postal Inspector Sheldon Jones and gave Jones verbal consent to unlock the glove compartment. In the glove compartment was a hand gun, holstered in a black canvas holster wit an extra magazine attached to the holster.  Jones removed the gun from the holster. He later identified the gun as a Springfield Armory XD-40, semi-automatic handgun, serial no. U.S.431816, stainless steel slide, with a black plastic grip.  Jones advised Dorosan of his *Miranda* rights and then asked Dorosan if he would speak to him about the ammunition and firearm recovered on postal property.  On the advice of his union steward, Dorosan declined to answer questions without an attorney present.  While the Postal Inspectors were at the post office, they took pictures of the firearm prohibition posters that were in the building, including those near the employee time clocks.

On February 28, 2008, the United States filed a one-count Bill of Information charging him with violating 18 U.S.C. § 930(a), Possession of Firearms and Dangerous Weapons in Federal Facilities.  On May 9, 2008, the United States filed a one-count Superseding Bill of Information charging Dorosan with violating 39 C.F.R. §232.1(1), Conduct on Postal Property, which specifically alleges that Dorosan carried, concealed and stored a firearm on postal property.[1]

On June 11, 2008, Dorosan's counsel filed a motion to dismiss the indictment arguing

that:

---

[1]United States' Memorandum in Opposition to Motion to Dismiss at pp. 1-2 [Doc. #30].

As applied, the [postal] regulation [39 C.F.R. §232.1(1)] violates Dorosan's right to bear arms under the Second Amendment of the U.S. Constitution. It is not a narrowly tailored exception to the Second Amendment right because it does not require a showing that the persons to whom it applies are dangerous.[2]

## PARTIES' CONTENTIONS

Dorosan contends that, as applied to a postal employee keeping a gun in his car while parked in the parking lot of a postal facility during his shift, 39 C.F.R. § 232.1(1) is unconstitutional in that it violates his individual Second Amendment right to bear arms. Defendant urges the Court to adopt the reasoning set forth in *United States v. Emerson*, 270 F.3d 203, 227 (5th Cir.2001) and to dismiss the Government's superseding bill. Dorosan explains that, in *Emerson,* viewing the Second Amendment against the historical background that existed at the time, the Fifth Circuit concluded that the people at large, from whom any militia would be formed, are guaranteed the right to keep and bear arms (and be conversant with their use) so as to facilitate the objective of the preamble.[3] Defendant highlights that the Fifth Circuit recognized reasonable restrictions and concluded that "the nexus between firearm possession by

---

[2]Dorosan's Motion to Dismiss Superseding Bill of Information [Doc. #25]; Defendant's Memorandum in Support at p. 1 (arguing that, under *United States v. Emerson*, 270 F.3d 203, 261-64 (5th Cir. 2001), *cert. denied*, 536 U.S. 907 (2002), this case does not fall within the parameters of a permissible exception to the individual right to bear arms – *i.e.*, "limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms" there being no requisite judicial finding that the person(s) subject to the ban pose a future danger) [Doc. #25-2].

[3]*Id.* at p. 2 (citing *Emerson*, *supra*, rejecting a Second Amendment challenge addressing 18 U.S.C. § 922(g)(8) (individual subject to domestic violence restraining order in possession of a firearm) *United States v. Everist*, 368 F.3d 517 (5th Cir. 2004) (rejecting a Second Amendment challenge addressing 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) and *United States v. Patterson,* 431 F.3d 832 (5th Cir. 2005), *cert. denied*, 547 U.S. 1138 (2006) (rejecting a Second Amendment challenge addressing18 U.S.C. § 922(g)(3) (unlawful drug user in possession of a firearm)).

3

the party so enjoined and the threat of lawless violence is sufficient, though likely barely so, to support the deprivation, while the order remains in effect, of the enjoined party's Second Amendment right to keep and bear arms...."[4]

Dorosan contends that, because 39 C.F.R. § 232.1(1) applies to all persons entering or on Postal Service property without exception and regardless of the existence of any dangerous propensities, the regulation fails to pass constitutional muster under *Emerson*, *Everist*, and *Patterson*, *supra*.  Dorosan further argues that the fact that the presence of a firearm in a car may pose a risk to society is insufficient for purposes of excising an individual's fundamental right to bear arms.  Defendant urges the Court to find that, as a postal employee who travels to and from work in a high crime city, he has a legitimate need to carry a gun in his vehicle; thus, as applied to a postal employee keeping a gun in his car on the postal parking lot during his shift, § 232.1(1) is unconstitutional.[5]  Finally, Dorosan characterizes the regulation as "far too broad to qualify as a legitimate exception."[6]

The United States counters that clearly 39 C.F.R. § 232.1(1), which purports to regulate only postal property, is not unconstitutional.  The Government distinguishes *Emerson*, *supra*, which does not involve the Property Clause of the United States Constitution.  The case at bar involves the Property Clause which specifically grants Congress the right to regulate federal property, including the right to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States.  The Government cites *United*

---

[4]*Id*. (citing *Emerson,* 270 F.3d at 264).

[5]*Id.* at p. 3.

[6]*Id.* at p. 4.

4

*States v. Gliatta*, 580 F.2d 156 (5th Cir. 1978), *cert. denied*, 439 U.S. 1048 (1978), wherein the

Fifth Circuit upheld convictions of a postal worker under 39 C.F.R. § 232.6(k) &(d) for failing to

drive in a careful and safe manner on postal property and failing to comply with directions of

security force personnel.[7]

The Government submits that the regulation at issue here serves the purpose of

maintaining safety and order on Government property and furthers the Postal Service's policy of

Zero Tolerance of workplace violence.  The United States emphasizes that the Postal Service

utilizes both  18 U.S.C. § 930 (a) and 39 C.F.R. § 232.1(1) in tandem to effect workplace and

public safety on United States Postal Service property.  The Government further contends that

the defendant has misconstrued *Emerson, Everist* and *Patterson, supra,* as superimposing an

additional requirement upon all federal regulations and laws (without exception), including

regulations banning weapons on postal property issued pursuant to the Property Clause of the

United States Constitution.

## DISCUSSION

### Operative Federal Workplace/Facility Regulation

Title 39, Code of Federal Regulations, Section 232.1(1) states:

> Weapons and explosives.  Notwithstanding the provisions of any other
> law, rule or regulation, no person while on postal property may carry
> firearms, other dangerous or deadly weapons, or explosives, either openly
> or concealed, or store same on postal property, except for official
> purposes.

---

[7]*See* United States' Memorandum in Opposition at p. 4( citing *United States v. Gliatta*, 580 F.2d 156, 160 (5th Cir. 1978) for the proposition that, "[b]eyond doubt, the Property Clause authorizes the enactment and enforcement of regulations which, like these at issue in this case, are designed to maintain safety and order on government property")[Doc. #30].

Section 232.1(1) bans the storage or possession of weapons (concealed or otherwise) in an enclosed postal parking lot, whereas 18 U.S.C. § 930(a) bans simple possession of a firearm in a federal facility/building provided the requisite notice is posted as described in § 930(h).

### The Right to Bear Arms

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. CONST. amend. II.

### Second Amendment Jurisprudence

Most recently in *District of Columbia v. Heller*, 2008 WL 2520816 (June 26, 2008) (Scalia, J.), the Supreme Court considered a direct Second Amendment challenge to the District of Columbia's absolute ban on handguns, making it a crime to carry an unregistered firearm, prohibiting the registration of handguns and requiring residents to keep lawfully owned firearms unloaded and disassembled, thus prohibiting the use of functional firearms within the home for self-defense.  Affirming the D. C. Circuit, the majority concluded that the Second Amendment guarantees the individual right of every American to possess and carry weapons unconnected to militia service.[8]

Most notably, the Supreme Court specifically recognized limitations of the "right to bear

---

[8]*District of Columbia v. Heller*, --- S.Ct. ----, 2008 WL 2520816 at ** 31-34, 39 (U.S. Jun 26, 2008) (No. 07-290) (bolding and underlining emphasis added) (concluding that nothing in the Supreme Court precedents foreclose on the Court's adoption of the individual-rights understanding of the Second Amendment, including *United States v. Cruikshank*, 92 U.S. 542 (U.S. La. Oct. Term 1875) which supports the individual-rights interpretation and *United States v. Miller,* 307 U.S. 174 (1939) which held that the *type of weapon at issue* was not eligible for Second Amendment protection and not a word was said about the history of the Second Amendment).

arms," to wit:

> **Like most rights, the right secured by the Second Amendment is <u>not</u>
> unlimited**.... For example, the majority of the 19th-century courts to consider the
> question held that prohibitions on carrying concealed weapons were lawful under
> the Second Amendment or state analogues.  *See e.g., State v. Chandler*, La. Ann.,
> at 489-490; *Nunn v. State*, 1 Ga, at 251, *see generally* 2 Kent *340, n. 2; The
> American Students' Blackstone 84, N. 11 (G. Chase ed. 1884).  Although we do
> not undertake an exhaustive historical analysis today of the full scope of the
> Second Amendment, **nothing in our opinion should be taken to cast doubt on
> the longstanding prohibitions on the possession of firearms** by felons and the
> mentally ill, or laws forbidding the carrying of firearms **in sensitive places such
> as** schools and **government buildings**, or laws imposing conditions and
> qualifications on the commercial sale of arms.[9]

The Court observed that the D.C. handgun ban amounts to a prohibition of an entire class of

"arms" that the American people have considered to be the quintessential self-defense weapon

and concluded that a complete prohibition of their use is invalid.[10]  The majority debunked the

"interest-balancing inquiry" endorsed by Justice Breyer, noting that it "results in the

constitutionality of the handgun ban.  QED."[11]

Justice Scalia summarized the majority's holding in *District of Columbia v. Heller*, as

follows:

> In sum, we hold that the District's ban on handgun possession *in the home*
> violates the Second Amendment, as does its prohibition against rendering any
> lawful firearm in the home operable for the purpose of immediate self-defense.
> Assuming that Heller is not disqualified from the exercise of Second Amendment
> rights, the District must permit him to register his handgun and must issue him a
> license *to carry it in the home*.              * * *

---

[9] *Id.* at ** 34-35 & n. 26 (bolding and underlining emphasis added) (identifying
presumptively lawful regulatory measures only as examples and not an exhaustive listing).

[10]*Id.* at ** 35-36.

[11]*Id.* at ** 38-39.

We are aware of the problem of handgun violence in this country, and we take seriously the concerns raised by the many *amici* who believe that the prohibition of handgun ownership is a solution.  The Constitution leaves the District of Columbia a variety of tools for combating that problem, including some measures regulating handguns, see *supra*, ---- - ----, and n. 26.[12]

The Fifth Circuit in *Emerson* similarly concluded that the Second Amendment confers an individual right to bear arms, apart from any connection to a state-run militia. The two judge majority went on to state that the Second Amendment guarantees an individual's right to keep and bear arms for self-defense, defense of property, game hunting, and to enable him to be called on as needed by a state to resist oppression and tyranny by the federal government and the federal standing armies, so long as the weapons are not of a type that have no conceivable application in the context of a state Militia.[13]  In addressing the scope of the Second Amendment, the *Emerson* court agreed with the district court that the Second Amendment provides an individual right as opposed to a pure collective right to bear arms.  Nevertheless, the Fifth Circuit reversed the district court, concluding that an individual right to bear arms could be limited whereas in that particular case a restraining order had been entered against the defendant for threats of domestic violence – *i.e.*, defendant was convicted of violating 18 U.S.C. 922(g)(8).[14]

### Neither *Heller* nor *Emerson, supra,* Compel the Conclusion that Title 39, Code of Federal Regulations, Section 232.1(1) Violates the Second Amendment

---

[12]*Id.* at *39 (The Second Amendment is itself "the very *product* of interest balancing by the people" and "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.").

[13]*Emerson*, 270 F.3d at 260-264.

[14]*Id.* at 264-265.

Both *Heller* and *Emerson*, discussed above, make it clear that the "right to bear arms" –
albeit an individual fundamental right of all Americans secured by the Second Amendment – is
not unlimited.

The United States Postal Service is a quasi-governmental corporation established by
Congress and is the successor to the United States Post Office. The business of USPS is mail.
The U.S. Constitution itself authorizes Congress "[t]o establish Post Offices and post Roads,"
U.S. Const. art. I, § 8, cl. 7, and the Postal Service has operated throughout nearly the entire
history of the United States.  It is beyond cavil that the performance of postal services is a
traditional function of the government. Moreover, the property at issue is *postal* property.

The Property Clause of the United States Constitution grants Congress the right to
regulate federal property.  It provides: "The Congress shall have the Power to dispose of and
make all needful Rules and Regulations respecting the territory or other Property belonging to
the United States...."  U.S. Const. art. IV, § 3, cl. 2

The Fifth Circuit has routinely upheld federal regulations that are designed to promote
workplace and public safety on government property.[15]  In *United States v. Gliatta*, 580 F.2d 156
(5th Cir. 1978), the court cited the Property Clause stating that it is "beyond doubt" that it
"authorizes the enactment and enforcement of regulations which ... are designed to maintain
safety and order on government property." *Id.* at 160.  In *Gliatta*, the court observed:

> The federal government is not, however, hamstrung by the Exclusive
> Jurisdiction Clause when it seeks to enact and enforce regulations pertaining to

---

[15]*See United States v. Gliatta*, 580 F.2d 156 (5th Cir. 1978) (affirming the convictions of a
postal worker under 39 C.F.R. § 232.6(k) &(d) for failing to drive in a careful and safe manner
on postal property and failing to comply with directions of security force personnel), *cert.
denied*, 439 U.S. 1048 (1978).

postal service and government property.  The Post Office Clause, Art. I, s 8, cl. 7, grants Congress the power "(t)o establish Post Offices and post Roads." This clause has been construed expansively to encompass all sorts of measures relating to the safe and efficient transmission of the mail, *See, e. g.*, *Ex parte Jackson*, 1878, 96 U.S. 727, 24 L.Ed. 877; *In re Rapier*, 1892, 143 U.S. 110, 12 S.Ct. 374, 36 L.Ed. 93, and, in conjunction with the Necessary and Proper Clause, Art. I, s 8, cl. 18, is more than adequate constitutional authority for the postal regulations which Gliatta has violated.

Moreover, the Property Clause, Art. IV, s 3, cl. 2, gives Congress the power to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." The Supreme Court has explicitly held that the presence or absence of federal jurisdiction under the Exclusive Jurisdiction Clause "has nothing to do with Congress' powers under the Property Clause." *Kleppe v. New Mexico*, 1976, 426 U.S. 529, 542-43, 96 S.Ct. 2285, 2293, 49 L.Ed.2d 34.[16]  Beyond doubt, the Property Clause authorizes the enactment and enforcement of regulations which, like those at issue in this case, are designed to maintain safety and order on government property. *See United States v. Brown*, 8 Cir., 1977, 552 F.2d 817, 821-22, *cert. denied*, 1977, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266; *Robbins v. United States*, 8 Cir., 1922, 284 F. 39; *United States v. Matherson*, E.D.N.Y., 1973, 367 F.Supp. 779, *Aff'd mem.*, 2 Cir., 1974, 493 F.2d 1399; *See also McVay v. United States*, 5 Cir., 1973, 481 F.2d 615.[17]

Clearly, 39 C.F.R. § 232.1(1) which bans possession of weapons *solely on postal property* is not unconstitutional as applied.  *Neither Heller* nor *Emerson*, *supra*, involved gun control regulations banning possession of "arms" *on federal property*.  Indeed, the Supreme Court in *Heller* described the District's statute as a law that "totally bans handgun possession" extends to the home and "requires that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable."[18]

The regulation at issue in this case is far more limited in application in that it (1) applies

---

[16] "Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands pursuant to the Property Clause." 426 U.S. at 543, 96 S.Ct. at 2293.

[17]*Gliatta*, 580 F.2d at 160 & n. 10.

[18]*Heller,* 2008 WL 2520816 at * 35.

10

only on the confines of properly noticed postal property, (2) is sanctioned by both the Property and Postal Clauses of the U.S. Constitution and (3) falls within the *Heller* Court's category and non-exhaustive list of excepted longstanding prohibitions on carrying firearms – *i.e.*, "sensitive places such as schools and government buildings."[19]

Indeed, federal law (OSHA) requires employers to abate workplace hazards and encourages employers to take measures to prevent gun-related injuries.[20]  Surely, the United States Postal Service would be remiss if it failed to practice what federal law requires.  Without question, § 232.1(1) bolsters the United States Postal Service's zero tolerance for workplace violence and is a regulation designed to maintain safety and order on postal property.  18 U.S.C. § 930 (a), which prohibits possession of dangerous weapons, serves the same purpose within federal facilities. Congress has the authority to regulate safety of the post office and its property, notwithstanding the individual right to bear arms in the home, "where the need for defense of self, family and property is most acute."[21]

The ban at issue does not affect the right of all individuals to bear arms at home or traveling in a vehicle to and from work through high crime areas.  Its reach does not extend

---

[19]*Id.* at * 35 and n. 26.

[20]*See also ConocoPhillips Co. v. Henry*, 520 F.Supp.2nd 1282 (N. D. Ok. 2007) (determining that state law criminally prohibiting an effective method of reducing gun-related workplace injuries conflicted with federal law (OSH Act), which requires employers to abate workplace hazards and encourages employers to prevent gun-related injuries; permanently enjoining enforcement of Okla. Stat. Tile 21, §§ 1289.7a and 1290.22(B) which make it a crime for any employer or business entity to establish or enforce any policy that has the effect of preventing any person, except a convicted felon, from transporting and storing firearms locked in a motor vehicle on any property set aside for any motor vehicle).

[21]*Heller*, 2008 WL 2520816 at * 36 (further noting that [f]ew laws in the history of our Nation have come close to the severe restriction of the District's handgun ban").

beyond the noticed, gated confines of United States Postal Services' property.  It is narrowly

tailored to effect public and workplace safety *solely on postal property* consistent with the

Property and Postal Clauses.  Similarly, 18 U.S.C. § 930(a) criminalizes knowing possession of

dangerous weapons, but only within the confines of a federal facility/building.[22]  Regulations

forbidding the possession or carrying of firearms "in sensitive places" such as federal and/or

postal property abound; these longstanding prohibitions have been upheld.[23]

      The parties have identified no case law relevant to the *precise* question presented.  The

undersigned has performed a thorough search of case law involving gun-control regulations or

---

[22]*See United States v. Manning*, 37 Fed.Appx. 90, 2002 WL 1022013 (5th Cir. 2002)
(unpublished) (affirming judgment revoking Manning's supervised release for knowing
possession of a dangerous weapon in a federal facility in violation of § 930(a)); *United States v.
Rodriguez*, 460 F.Supp.2d 902 (S. D. Ind. 2006) (discussing violation of § 930(a) on postal
property); *Gordon v. Runyon*, 1994 WL 139411 (E. D. Pa.), aff'd, 43 F.3d 1461 (3rd Cir. 1194)
(discussing possession of a stun gun and mace in the context of both 18 U.S.C. § 930 (1990) and
39 C.F.R. § 232.1(l) (1992)); *United States v. Murray*, 271 F.3d 349 (1st Cir. 2001) (considering
a case of knowing possession of a black powder pistol in the Margaret Chase Smith Federal
Building and affirming the district judge's ruling denying Murray's motion for acquittal though
he had not passed through the metal detectors when interdicted by security); *Rosenthal v. United
States*, 175 F.3d 1020, 1999 WL 253512 (7th Cir. 1999) (unpublished) (affirming the dismissal of
thirteen count federal complaint of  Rosenthal (an attorney in the SSA's Office of Hearings and
Appeals) who was attacking personnel action undertaken by his federal employer; highlighting
that bringing a dangerous weapon into a federal facility is both a federal crime and a violation of
the terms of employment of one who works in a federal facility), *cert. denied*, 528 U.S. 876
(1999).

[23]*See* Note 22, *supra*; *see, e.g.*, 4 C.F.R. § 25.14 (possession of firearms prohibited in
GAO Building, except for "official purposes"); 32 C.F.R. § 234.10 (possession of firearms
prohibited at Pentagon without authorization from Defense Protective Service); 32 C.F.R. §
1903.7 (possession of firearms prohibited on CIA protected property without authorization from
Director of Security); 44 C.F.R. § 15.14 (possession of firearms prohibited at FEMA Special
Facility without authorization from FEMA Director). *Cf. Downing v. Kunzig*, 454 F.2d 1230,
1231 n. 1 & 1233 (6th Cir.1972) (taking judicial notice of nationwide violence and hazard to
government officials and noting that federal officials have discretion to adopt reasonable rules to
guard against such dangers).

firearms bans which do not extend beyond the federal/postal property regulated.  Although the Fourth Amendment, Due Process and other constitutional issues come to the fore, this Court has not found one case involving a federal facility or postal property addressing the weapon's ban in the context of the "right to bear arms"secured by the Second Amendment.  This comes as no surprise.

Indeed, the logical corollary of a weapons ban on federal property is an individual's lessened expectation of privacy in terms of equally *fundamental* Fourth Amendment rights.  The Court observes that in recognition of the citizen's lessened expectation of privacy upon entering certain federal property and further considering the state's concurrent legitimate interest in maintaining security on said property, courthouses,[24] airports,[25] military installations[26] and prisons[27]  have been deemed special or sensitive areas in which warrantless security searches with attenuated Fourth Amendment requirements are permitted.[28]  Such searches are designed "to assure that [government] property and personnel are protected against damage, injury or destruction"[29] **by identifying and interdicting individuals <u>who are in possession of or carrying dangerous weapons</u>**, *inter alia*, and attempting to gain access to the facility so armed *in violation of federal regulations*.  In other words, the federal regulations banning firearms on

---

[24]*McMorris v. Alioto,* 567 F.2d 897 (9th Cir. 1978).

[25]*United States v. Albarado*, 495 F.2d 799 (2nd Cir. 1974); *U.S. v. Skipwith*, 482 F.2d 1272 (5th Cir. 1973);

[26]*United States v. Ellis*, 547 F.2d 863 (5th Cir. 1977).

[27]*United States v. Sihler*, 562 F.2d 349 (5th Cir. 1977).

[28]*See, e. g., Downing v. Kunzig*, 454 F.2d 1230 (6th Cir. 1972).

[29]*Id.* at 1233.

federal property and, concomitantly, attenuated Fourth Amendment rights (which have been sustained by the courts time and again), go hand-in-glove and with the territory – *i.e.*, federal property.  In sum, the Second Amendment does not secure *any* individual's fundamental "right to bear arms" when they are occupying either a federal facility or postal property, where regulations banning the possession, carrying and storing of firearms on the premises are properly noticed.  The Supreme Court in *Heller* explicitly noted that "nothing in [its] opinion should be taken to cast doubt on longstanding ... laws forbidding carrying of firearms in sensitive places such as ... government buildings...."[30]  As previously noted, the Supreme Court's listing does not purport to be exhaustive.[31]

For all of the above and foregoing reasons, the Court previously issued an order in open court DENYING the Defendant's Motion to Dismiss.

New Orleans, Louisiana, this 30th day of June, 2008.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[30]*Heller,* 2008 WL 2520816 at * 35; *see also Emerson*, 270 F.3d at 227, n. 21 and 261 n.62 (noting that "the Supreme Court has remarked that the right to bear arms is, like other rights protected by the Bill of Rights, 'subject to certain well-recognized exceptions' ... and hence 'is not infringed by laws prohibiting the carrying of concealed weapons;'"citing *Robertson v. Baldwin*, 165 U.S. 275 (1897) for the proposition that "the bill of rights protections are not absolutes but subject to exceptions").

[31]*Heller,* 2008 WL 2520816 at * 35 & n. 26.

14